(April 9, 1992)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOAQUIN FERNANDEZ, Appellant.—Judgment of the Supreme Court, New York County (Murray Mogel, J.), rendered September 5, 1989, convicting defendant, after trial by jury, of bribery in the third degree and criminal possession of a weapon in the seventh degree, and upon his plea of guilty, in a separate indictment, of attempted burglary in the second degree, and sentencing him to concurrent terms of two to four years on the bribery and weapon possession counts, and two and one-half to five years on the attempted burglary count, is unanimously affirmed.

Officer Jackson, on narcotics foot patrol, was stopped by a pedestrian who told him narcotics were being sold in front of 195 Stanton Street. The officer obtained the assistance of two other police officers and proceeded to that location where they observed an exchange of cash which was disguised as a handshake between defendant and a woman. The officers approached defendant and decided to question him in the lobby of the building which was just 10 feet away "for our own safety" since there was "a large crowd outside". As they walked defendant to the lobby of the building, defendant threw a crack pipe into a garbage can. Inside the building Officer Griffin asked defendant his name and why he was at that location, but defendant "was mumbling". Officer Griffin realized the defendant had something in his mouth, and when he told him to spit it out, defendant spit out three vials of crack cocaine. The officers picked up the vials and arrested defendant.

Defendant asserts that the Supreme Court erred in denying the motion to suppress the crack pipe and the vials of cocaine because the police saw only cash and not drugs exchanged,

and thus lacked a reasonable suspicion that a crime had been committed. This made defendant's temporary detention for questioning unlawful.

In *People v De Bour* (40 NY2d 210), the Court of Appeals has delineated four levels of police intrusion, and the requisite circumstances of each level. Thus, "[t]he minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality". *(Supra,* at 223.) The next level which is the common law right to inquire requires a greater factual predicate of a "founded suspicion that criminal activity is afoot", since it permits the officer to interfere with the citizen "to the extent necessary to gain explanatory information, but short of a forcible seizure". *(Supra,* at 223.) The third level permits the forcible stop and detention for questioning (including the right to frisk for weapons), where the officer "entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor". *(Supra,* at 223.) Finally, the most intrusive action, the arrest and taking into custody of a citizen is justified when the officer "has probable cause to believe that person has committed a crime, or offense in his presence". *(Supra,* at 223.)

In the present case, a passer-by informed Officer Jackson that men and women were engaged in selling drugs at a specific location, 195 Stanton Street. "Even in instances where the informant is unidentified where the police have had a face-to-face confrontation with the informant, and have had an opportunity to evaluate his or her reliability, such information, while not rising to the level of probable cause, may provide the reasonable suspicion necessary for a stop and frisk" *(People v DeJesus,* 169 AD2d 521, 522, *lv denied* 77 NY2d 994). The location specified by the passer-by is in a neighborhood infested by drug dealers and drug transactions with their baleful effects. This is the reason Officer Jackson was on *narcotics* foot patrol a block away from this location. When the officer, accompanied by two others, watched the crowd at that location surreptitiously from behind a fence, defendant was observed not only exchanging cash with an unidentified female, but attempting to disguise the transaction as a handshake. This observation, together with the in-person report by the passer-by of a drug sale, coupled with the flight of the women and others at the scene upon the approach of the officers gave the police a reasonable suspicion that defendant had committed a crime, and therefore authorized his stop

and detention for investigatory purposes. Once defendant discarded the crack pipe and the vials of cocaine the police had probable cause to arrest him.

With respect to the second indictment charging defendant with burglary, defendant's motion to suppress the complainant's identification of him was properly denied. The evidence, as credited by the suppression court, established that the identification was not police arranged. Spontaneous identifications, unarranged by the police, are not subject to suppression (People v Whitehead, 154 AD2d 493, lv denied 75 NY2d 777). Even if the identification had resulted from a showup, the viewing was not unduly suggestive and was sufficiently proximate in space and time to the commission of the crime to be admissible (supra, at 494). Concur—Murphy, P. J., Rosenberger, Ellerin and Asch, JJ.