FRANK ORTEGA, JR., demandante y recurrente, *v.* NORA ILSA MORALES ORTEGA, demandada y recurrida.

*Número:* RE-90-44 *Resuelto:* 21 de octubre de 1992.

*Roberto López García*, abogado del demandante y recurrente; *Luis Benjamín Méndez Méndez* y *Héctor J. Quijano Borges*, abogados de la demandada y recurrida.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Nos corresponde determinar, en el presente caso, si al amparo del *Parental Kidnaping Prevention Act of 1980* (en adelante P.K.P.A.), 28 U.S.C. sec. 1738A, el tribunal que dicta sentencia de divorcio y confiere originalmente la custodia a la madre del hijo menor habido en el matrimonio retiene jurisdicción para modificar el decreto de custodia aun cuando el menor lleva residiendo junto a su progenitora en otro estado más de cuatro (4) años y solamente el padre no custodio es residente del estado donde se promueve la acción de cambio de custodia.

I

El Sr. Frank Ortega, Jr. y la Sra. Nora Ilsa Morales Ortega contrajeron matrimonio en el estado de California el 5 de mayo de 1979. Producto de esa unión nació el menor Francisco Ortega Morales III, el 11 de noviembre dé 1979. En 1984 el padre del menor inició el procedimiento de divorcio en dicho estado.[1] Mientras se tramitaba el divorcio

[1] Junto a la petición de divorcio las partes acompañaron un documento que establecía cómo se regirían las relaciones filiales. En el mismo se estableció que el menor estaría con su progenitora en Puerto Rico durante el año escolar, pero los meses de verano los pasaría con el padre. Además, se establecieron los derechos de visitas de ambos padres y de otros familiares, en el tiempo en que el niño estuviese ya sea con la madre o con el padre.

con el conocimiento del padre del menor, la madre y el niño se trasladaron a Puerto Rico, donde establecieron su residencia. Finalmente, el 14 de febrero de 1985 el Tribunal Superior del estado de California para el condado de Orange decretó disuelto el vínculo matrimonial entre el señor Ortega, Jr. y la señora Morales Ortega. Como parte de la sentencia de divorcio se determinó que ambos padres compartirían la patria potestad del menor. La custodia se le concedió a la madre.

En 1988 el padre del menor, todavía residente del estado de California, solicitó al Tribunal Superior de dicho estado para el condado de Orange que modificara el decreto de custodia y se le concediera a él la custodia del menor. El 3 de octubre de 1988 la señora Morales Ortega compareció por derecho propio mediante moción en cumplimiento de orden y solicitó se desestimara la acción. Hizo constar en dicha moción que no se estaba sometiendo a la jurisdicción del tribunal y alegó, en síntesis, que este caso no cumplía con los requisitos jurisdiccionales del P.K.P.A., 28 U.S.C. sec. 1738A, y que el menor lleva residiendo en el Estado Libre Asociado de Puerto Rico desde 1984.

Así las cosas, la vista sobre custodia se celebró el 1ro de noviembre de 1988 sin la presencia de la madre.[2] Mediante orden el tribunal modificó el decreto de custodia concediéndola al padre. La patria potestad sobre el menor siguió siendo compartida por ambos padres. El tribunal de California fundamentó su determinación en que hubo un cambio sustancial en las circunstancias en el caso, que tenía jurisdicción porque se trataba de un decreto original de California donde la parte promovente todavía reside. No especificó, sin embargo, en qué consistió el cambio de circunstancias que motivó la modificación del decreto original de custodia, ni cuál fue la evidencia aportada por el promo-

---

[2] La Sra. Nora Ilsa Morales Ortega hizo constar en la moción que sometió al Tribunal Superior del estado de California para el condado de Orange que no contaba con los recursos económicos necesarios para asistir al proceso incoado en California.

vente para apoyar una determinación de cambio de circunstancias.

En vista de lo anterior, el padre del menor presentó ante el Tribunal Superior de Puerto Rico, Sala de San Juan, una solicitud de exequátur para que se le diera entera fe y crédito al decreto del tribunal de California.

Luego de presentados los memorandos de derecho de las partes, el tribunal de instancia denegó la demanda rehusando así a reconocerle entera fe y crédito al decreto de cambio de custodia del tribunal de California. Su decisión se fundó en que "[n]o tenía jurisdicción el Tribunal que emitió la Resolución de Custodia, porque al momento de la solicitud, el Estado de residencia del menor y de la promovida era el Estado Libre Asociado de Puerto Rico".

Inconforme con esta determinación, la parte demandante, el padre del menor, presentó escrito de revisión ante nos planteando como único señalamiento de error el siguiente:

> Erró el Tribunal Superior de Puerto Rico, Sala de San Juan, al desestimar la demanda en el caso de epígrafe, al interpretar que de conformidad con el "Parental Kidnapping Prevention Act", solamente el Estado de residencia del menor, puede hacer una determinación.

Alegó que el P.K.P.A., 28 U.S.C. sec. 1738A, en el inciso (d), dispone que el estado que emitió el decreto de custodia tiene jurisdicción para hacer cualquier cambio a dicho decreto, si el menor o uno de los padres aún reside en el estado. Concluyó, por lo tanto, que no era necesario que el niño estuviera residiendo en dicho estado para que ese foro tuviese jurisdicción. Se apoyó, además, en lo dispuesto en el inciso (c) de la sección anteriormente mencionada a los efectos de que:

> (c) Una determinación de custodia hecha por un tribunal de un estado es consistente con los requisitos de esta sección solamente si—

(1) dicho tribunal tiene jurisdicción al amparo de la ley del estado, y

(2) se cumple con una de las siguientes condiciones:

(A) Ese estado (i) es el estado residencia del menor a la fecha en que comenzaron los procedimientos, o (ii) ha sido el estado residencia del menor seis meses antes de la fecha en que comenzaron los procedimientos y el menor se encuentra fuera del estado porque ha sido trasladado o retenido por una de las partes *o por otras razones* y una de las partes aún reside en el estado que emitió el decreto. (Traducción nuestra y énfasis suplido.) 28 U.S.C. sec. 1738A(c).

Para sustentar su posición de que el tribunal de California tenía jurisdicción para modificar el decreto original de custodia, el recurrente hizo hincapié en la frase "o por otras razones".

Por su parte, la progenitora del menor sostuvo en su alegato que el tribunal de California no tenía jurisdicción a base de lo que dispone el P.K.P.A. y que el estado residencia del menor lo es Puerto Rico. Siendo, por lo tanto, éste el foro que tiene jurisdicción sobre el asunto y el que puede hacer una modificación de custodia en el presente caso. Le asiste la razón. Veamos.

## II

En 1980 se aprobó por el Congreso de Estados Unidos el P.K.P.A. El propósito primordial de esta legislación es promover la cooperación entre los estados, facilitar el cumplimiento de los decretos de custodia de otros estados, desalentar la competencia entre varias jurisdicciones y evitar conflictos entre tribunales de distintos estados en lo que respecta a determinaciones de custodia de menores. Declaración de Propósitos del P.K.P.A., Pub. L. Núm. 96-611, Secs. 7(c)(1) – 7(c)(5), 94 Stat. 3568–3569 (1980). Es por ello que el P.K.P.A. comienza señalando en la Sec. 1738A que:

Las autoridades de cualquier estado deberán poner en vigor, de acuerdo a sus propios términos y no podrán modificar un

decreto de custodia de otro estado, el cual fue emitido acorde con lo que dispone esta sección, excepto por lo dispuesto en el sub-inciso (f) de esta sección. (Traducción nuestra.) 28 U.S.C. sec. 1738A(a).

De manera que el P.K.P.A. requiere que un estado le dé entera fe y crédito a un decreto de custodia de otro estado, siempre y cuando el estado que emitió el decreto lo haya hecho cumpliendo con lo dispuesto en la ley federal. Es importante señalar que esta ley específicamente dispone que sus disposiciones aplican a Puerto Rico. 28 U.S.C. sec. 1738A(b)(8).

Para que un estado pueda emitir un decreto de custodia que sea consistente con el P.K.P.A., tiene que tener jurisdicción al amparo de su propia legislación y, además, cumplir con una de las condiciones que se especifican en la ley federal. Esto requiere que para resolver la presente controversia acudamos a la ley de California para examinar los fundamentos jurisdiccionales que permiten que un tribunal de ese estado pueda modificar un decreto de custodia, ya sea de ese mismo tribunal o de un tribunal de otro estado.

En 1973, con anterioridad al P.K.P.A., el estado de California adoptó el *Uniform Child Custody Jurisdiction Act* (U.C.C.J.A.), West's Ann.Cal.Civ.Code Sec. 5150 y ss., (Código Civil de California), una legislación que tiene el propósito de establecer normas uniformes que le permitan al estado determinar si tiene jurisdicción sobre la materia en los casos de custodia. Esta ley, además, impone la obligación al estado de reconocer y darle validez a los decretos de otros estados. En otras palabras, el U.C.C.J.A. se aprobó para evitar los decretos de custodia conflictivos. Sin embargo, el problema que se quiso evitar con la aprobación de la ley continuó, ya que algunos estados no adoptaron el U.C.C.J.A. y otros aprobaron sus propias versiones del mismo. Véase *Thompson v. Thompson*, 108 S.Ct. 513, 517 (1978).

Ante tal situación, el Congreso reconoció la necesidad de fijar normas uniformes para regir los casos de custodia. De esa manera se evitaba que el padre no custodio sacara al niño de la jurisdicción del estado donde se había determinado la custodia e instara una acción en otro estado buscando prevalecer con un nuevo decreto de custodia.([3]) Así surgió el P.K.P.A.

■ Teniendo presente lo anteriormente señalado, veamos cuáles son los requisitos jurisdiccionales de la Ley de California. La Sec. 5152 del Código Civil de California dispone:

(1) Un tribunal de este estado, con competencia para decidir asuntos sobre custodia de menores, tendrá jurisdicción para determinar la custodia de un menor, mediante decreto inicial o modificatorio, siempre y cuando se cumpla con cualquiera de las siguientes condiciones:

(a) Que este estado (i) sea el estado de residencia del menor al comienzo del proceso, o (ii) haya sido el estado de residencia del menor por un período de seis meses antes de que comenzara el proceso y el menor se encuentre ausente del estado por haber sido trasladado o retenido por una persona que alegue tener su custodia, o por otras razones, y uno de sus padres, o una persona que actúe como tal, continúe residiendo en este estado.

(b) Que conforme a los mejores intereses del menor un tribunal de este estado asuma jurisdicción porque (i) el menor y sus padres, o el menor y, por lo menos, uno de los litigantes, tiene contactos significativos con este estado, y (ii) exista y esté disponible en este estado evidencia sustancial relativa al cuidado, la protección, la formación y las relaciones personales presentes y futuras del menor.

(c) Que el menor se encuentre físicamente en.este estado y (i) haya sido abandonado o (ii) exista una situación de emergencia que requiera que se proteja al menor porque éste ha sido víctima de maltrato o ha recibido amenazas de maltrato o abuso, o ha sido descuidado o dependa de alguien.

(d) (i) Que ningún otro estado tenga jurisdicción conforme a ciertos requisitos previos sustancialmente acordes con los párrafos (a), (b) y (c), o que otro estado haya declinado asumir jurisdicción por considerar que este estado es el foro más apro-

---

([3]) Esto se conoce en inglés como *forum shopping*.

piado para decidir la custodia del menor, y (ii) que resulte beneficioso para el menor que este tribunal asuma jurisdicción. *(2) A excepción de las disposiciones de los párrafos (c) y (d) del inciso (1), la mera presencia física del menor, o del menor y uno de los litigantes, en este estado, no constituye de por sí razón suficiente para conferirle jurisdicción a un tribunal de este estado para hacer una determinación de custodia.* (Traducción nuestra y énfasis suplido.) West's Ann.Cal.Civ.Code Sec. 5152, pág. 307.

Los requisitos enumerados en el estatuto de California son prácticamente idénticos a los establecidos en el P.K.P.A. De hecho, el estatuto de California es idéntico a la Sec. 3 del U.C.C.J.A. que fuera aprobado inicialmente en 1968 por la Conferencia Nacional de Comisionados para uniformar leyes estatales y el American Bar Association.

■ A pesar de que en el U.C.C.J.A. hay cuatro (4) fundamentos jurisdiccionales independientes sobre la materia de custodia, los primeros dos, bajo los cuales la mera presencia física del menor es insuficiente para conferir jurisdicción, son los criterios principales. Véase S.M. Schuetze, *Thompson v. Thompson: The Jurisdictional Dilemma of Child Custody Cases Under the Parental Kidnapping Prevention Act,* 16 (Núm. 2) Pepp. L. Rev. 410 (1989). El P.K.P.A. expresa preferencia por el estado residencia del menor.[4] Shuetze, *supra,* pág. 417.

La jurisprudencia a nivel estatal, incluyendo la del estado de California, demuestra una marcada preferencia por el estado residencia del menor a la hora de decidir si el tribunal debe o no asumir jurisdicción para emitir un decreto de custodia o modificar el mismo. En *Kumar v. Santa Clara County Superior Court,* 177 Cal. Reptr. 763, 766 (1982), el tribunal expresó:

---

[4] La ley federal, 28 U.S.C. 1738A(c)(B), claramente dispone que en caso de que otro estado no tenga jurisdicción de acuerdo al subpárrafo A, entonces se tomarán en consideración los criterios del subpárrafo B. El subpárrafo A es el que dispone lo relativo al estado residencia del menor.

La jurisdicción para determinar la custodia del menor en el presente caso [por el mero hecho de ellos estar presentes en el estado donde se iniciaron los procedimientos de custodia] no depende de si el peticionario [el padre no residente] está sujeto a la Jurisdicción "in personam" de California.

 En otras palabras, el foro que haga la determinación de custodia no puede, bajo circunstancia alguna, ser aquél que convenga más a los padres o a uno de éstos, sino el que mejor sirva a los intereses del menor. Tomando esto en consideración es que en el P.K.P.A. se le da preferencia al estado residencia del menor, porque se entiende que éste es el que puede determinar mejor lo que es más beneficioso para el niño. Es en dicho estado donde el niño ha hecho amistades, asiste a la escuela y recibe asistencia médica: donde su vida se ha desenvuelto. Por lo tanto, se entiende que es en el estado residencia del menor donde con mayor probabilidad está disponible la evidencia que se requiere para hacer una adecuada determinación de custodia, una que tome en cuenta lo que es más conveniente para el menor. De manera que de existir conflicto con respecto a cuál es el requisito jurisdiccional aplicable de acuerdo al P.K.P.A., siempre deberá prevalecer el del estado residencia del menor. Shuetze, *supra*. En *Caronna v. Caronna*, 535 N.Y.S.2d 31 (1988), se dijo:

> Aunque la P.K.P.A. contiene en esencia los mismos cuatro fundamentos, éstos no tienen el mismo peso que les confiere la U.C.C.J.A. Según la P.K.P.A., la jurisdicción del "estado de residencia" tiene prioridad sobre las otras consideraciones. No será sino hasta que se determine que ningún otro estado podría asumir jurisdicción a la luz de la sección relativa al "estado de residencia", que se tomará en consideración el criterio de los mejores intereses del menor o el que otro estado haya declinado asumir jurisdicción, a menos que el menor se encuentre en este estado y exista una situación de abandono o de emergencia. En virtud de lo anterior, es esencial que se determine el estado de residencia del menor en cuestión para efectos de custodia. Véanse, además: *Custody of Brandon*, 551 N.E.2d 506, 510 (1990); *Snow v. Snow*, 369 N.W.2d 581, 583 (1985); *Dennis v. Dennis*, 366 N.W.2d 474, 477 (1985); *Boyd v. Boyd*, 653 S.W.2d

732, 735 (1983); *Matter of Welfare of Mullins*, 298 N.W.2d 56 (1980).

Por otra parte, cuando exista una inconsistencia entre la ley federal y la estatal, la federal deberá prevalecer. Véanse: *Hunter v. Hunter*, 585 So. 2d 71 (1991); *In Interest of A.E.H.*, 468 N.W.2d 190 (1991); *Murphy v. Woerner*, 748 P.2d 749 (Alaska 1988).

Tomando en consideración lo anteriormente expresado, apliquémoslo a los hechos particulares de este caso.

En 1984 el señor Ortega, Jr. presentó solicitud de divorcio ante el Tribunal Superior del estado de California para el condado de Orange. Desde que se comenzó a tramitar el divorcio, el padre del menor conocía que el niño iba a residir en Puerto Rico con su progenitora. Del propio documento que acompañó la petición de divorcio surge que el señor Ortega, Jr. consintió a que su hijo fuese trasladado a otra jurisdicción. De hecho, en este documento se estipuló que el niño viviría con su progenitora durante todo el año escolar y con el padre compartiría los meses de verano.

En 1985 se decretó disuelto el matrimonio entre el señor Ortega, Jr. y la señora Morales Ortega. No es hasta tres (3) años después, en 1988, que el padre del menor presenta solicitud para modificación de custodia ante el mismo tribunal que decretó el divorcio. El sabía que para esa fecha el niño ya no era residente del estado de California. Al momento de instarse el procedimiento éste llevaba residiendo en Puerto Rico cuatro (4) años. Resulta de importancia tener presente que en este caso no se trata del traslado de un niño a otro estado por el padre no custodio para evadir la jurisdicción del tribunal que decretó la custodia. Simplemente, la madre, a quien se le confirió la custodia del menor, luego de decretado el divorcio decidió venir a vivir a Puerto Rico porque aquí se encontraban sus familiares.

De manera que estamos ante una situación donde Puerto Rico pasó a ser el estado residencia del menor. Es a

este Foro a quien corresponde hacer en todo caso la determinación de modificación de custodia. En *Dennis v. Dennis*, supra, pág. 477, se dijo:

> [C]iertos tribunales han reconocido que luego de que el estado de residencia del menor haya emitido un decreto original de custodia, cualquier otro estado puede convertirse en el estado de residencia y asumir jurisdicción para modificar el decreto original.

En el caso de autos, al inicio del procedimiento el niño no se encontraba en California, ni había estado en dicho estado en los seis (6) meses previos al comienzo del procedimiento. No se cumplía, pues, con lo dispuesto en el inciso (A) de la Sec. 5152(1) del Código Civil de California. De igual manera, tampoco se cumplía con lo dispuesto en el inciso (b) de dicha sección. Este requiere que se tomen en consideración los mejores intereses del menor al asumir jurisdicción en un caso para modificar la custodia. Esta determinación la hace el tribunal evaluando los hechos siguientes: que el niño y sus padres o el niño y uno de los padres tienen una relación significativa con el estado y que en dicho estado hay evidencia sustancial sobre el cuidado, protección, entrenamiento y relaciones personales futuras y presentes del menor. En el caso de autos no hay duda de que en un tiempo así fue. Sin embargo, desde la tramitación del divorcio de sus padres el menor se trasladó a Puerto Rico con su progenitora. Desde ese entonces reside aquí. Es aquí, pues, donde se encuentra la mejor evidencia para determinar los mejores intereses del menor y Puerto Rico es el estado con el cual el menor tiene la relación más significativa. Puerto Rico es el foro con mayores contactos con el menor, el estado residencia actual del menor.

Tampoco están presentes en este caso los requisitos del inciso (c)(i) o (c)(ii) de la Sec. 5152(1) del Código Civil de California. No se trata de una situación de abandono del menor o de emergencia que requiera que el estado de California le dé al menor protección. Además, para que aplique este inciso es requisito indispensable que el menor esté físicamente presente en el estado de California.

Finalmente, no se da tampoco la situación de que no haya otro estado que tenga jurisdicción o que haya declinado ejercer jurisdicción. West's Ann.Cal.Civ.Code Sec. 5152(1)(d).

Por lo tanto, entendemos que actuó correctamente el foro de instancia al negarse a reconocerle entera fe y crédito al decreto de California. Bajo los hechos específicos de este caso, ese tribunal ya no tenía jurisdicción por no ser el estado residencia del menor. La P.K.P.A., 28 U.S.C. sec. 1738A(f), dispone que un tribunal de un estado podrá modificar un decreto de custodia de otro estado si (1) tiene jurisdicción para hacer tal determinación de custodia y (2) si el tribunal de otro estado ya no tiene jurisdicción o ha declinado ejercerla.

En virtud de lo anteriormente expuesto, *se dictará sentencia confirmando la emitida por el Tribunal Superior, Sala de San Juan, el 20 de octubre de 1989 y notificada el 18 de diciembre de 1989.*

Los Jueces Asociados Señores Negrón García y Fuster Berlingeri concurrieron sin opinión escrita.