EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Jeannette Collazo Dragoni<br><br>Peticionaria<br><br>v.<br><br>Frank Noceda González<br><br>Recurrido | Certiorari<br><br>2017 TSPR 120<br><br>198 DPR \_\_\_\_ |

Número del Caso: CC-2016-402


Fecha: 26 de junio de 2017


Tribunal de Apelaciones:

       Región Judicial de Bayamón y Aibonito


Abogado de la parte peticionaria:

       Lcdo. Julio E. Gil de Lamadrid


Abogada de la parte recurrida:

       Lcda. Liudmila Ortiz Marrero



Materia: Custodia: Jerarquía jurisdiccional que establece la Parental Kidnapping Prevention Act, 28 USC 1738A. Al cumplirse los requisitos de ese estatuto federal, 28 U.S.C. sec. 1738A(d), los tribunales de Puerto Rico mantienen jurisdicción continua para atender una modificación de custodia, aunque el estado de residencia del menor sea otro.



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jeannette Collazo Dragoni

 Peticionaria

   v.

Frank Noceda González

 Recurrido

*Certiorari*

CC-2016-0402

Opinión del Tribunal emitida por la Jueza Presidenta Oronoz Rodríguez

En San Juan, Puerto Rico, a 26 de junio de 2017.

Este caso nos permite precisar la jerarquía jurisdiccional que establece el Parental Kidnapping Prevention Act (P.K.P.A.), 28 U.S.C. sec. 1738A, y armonizar nuestras expresiones en Ortega v. Morales Ortega, 131 DPR 783 (1992) y Santiago v. Kabuka, 166 DPR 526 (2005). En particular, resolvemos que, una vez se satisfacen los requisitos de la 28 U.S.C. sec. 1738A(d), los tribunales de Puerto Rico mantienen **jurisdicción continua** para atender una modificación de custodia, incluso si el estado de residencia del menor es otro. A continuación, reseñamos brevemente los hechos pertinentes del caso que nos ocupa.

I

En el 2008, la Sra. Jeannette Collazo Dragoni (peticionaria o señora Collazo Dragoni) presentó una demanda de divorcio en contra de su esposo, el Sr. Frank Noceda González (recurrido o señor Noceda González). Tras varios trámites procesales, que incluyeron la participación de la Procuradora de Asuntos de la Familia y de un psicólogo del Tribunal, en el 2010 el foro primario concedió la custodia legal de los menores a su padre, el señor Noceda González. Por otra parte, estableció que la patria potestad sería compartida entre éste y la señora Collazo Dragoni. En desacuerdo, la señora Collazo Dragoni acudió en revisión ante el Tribunal de Apelaciones, pero ese foro confirmó la determinación del Tribunal de Primera Instancia.[1]

En el 2013, el señor Noceda González presentó ante el Tribunal de Primera Instancia una *Solicitud de Autorización de Traslado de Menores*. Expresó que recibió una oferta de empleo en el Estado de Florida, la cual hacía necesario establecer su residencia en ese estado. Solicitó al Tribunal que autorizara el traslado de los menores a Florida puesto que aceptar la oferta sería en los mejores intereses de sus hijos. En consideración a su solicitud de traslado, el señor Noceda González también pidió que se modificara la relación materno-filial, de modo que resultare más beneficiosa para las partes. Por su parte, la señora Collazo Dragoni solicitó la custodia de

---

[1] *Véase* Sentencia del Tribunal de Apelaciones, KLAN 2011-00269.

los menores. Ambas solicitudes fueron referidas a la Oficina de Relaciones de Familia.

Luego de examinar la prueba documental y testifical, incluyendo estudios realizados por tres trabajadores sociales y dos psicólogas, el Tribunal de Primera Instancia concluyó que el mejor bienestar de los menores se encontraba bajo la guardia y compañía del señor Noceda González. Por esa razón, concedió a éste la custodia legal y permanente de los tres menores y autorizó el traslado inmediato de éstos al Estado de Florida. Finalmente, el foro primario también impartió instrucciones sobre las relaciones filiales con ambos padres.[2]

En desacuerdo, la señora Collazo Dragoni presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. No obstante, el foro apelativo intermedio confirmó al foro primario, pues entendió que su determinación respondió al mejor bienestar de los menores. El Tribunal destacó que, aunque el traslado pudiese afectar la relación materno-filial, la misma no estaba imposibilitada, pues el foro primario determinó la manera en que ésta se llevaría a cabo.[3]

Luego de varias mociones que buscaban impugnar la determinación relacionada, en el 2015, el Tribunal de Primera Instancia concedió un término a las partes para que expresaran por qué los tribunales de Puerto Rico aún ostentan jurisdicción. Ello, en atención a que los menores

_____

[2] El foro primario dispuso que dos de los menores pasarían treinta días del receso de verano con la señora Collazo Dragoni. Además, estableció que las vacaciones navideñas se alternarían entre ambos padres. Apéndice, pág. 33.
[3] *Véase* Resolución del Tribunal de Apelaciones, KLCE-2014-01218.

residían fuera de Puerto Rico desde hacía más de seis meses.

La señora Collazo Dragoni sostuvo que el foro primario conservó su jurisdicción, que la residencia de los menores en Florida no convierte ese estado en el estado de residencia conforme con el P.K.P.A., y que no existía ningún pleito pendiente en otra jurisdicción. También pidió el traslado de los menores a Puerto Rico, pues alegó que el señor Noceda González obtuvo el traslado mintiéndole al Tribunal. Por su parte, el señor Noceda González solicitó el archivo del caso por falta de jurisdicción, pues el estado de residencia de los menores es Florida. En cuanto a la solicitud de traslado de la peticionaria, indicó que esos planteamientos ya habían sido rechazados en trámites anteriores. Por tal razón, exigió que le impusieran honorarios de abogado por temeridad.

El Tribunal de Primera Instancia emitió una *Resolución* en la cual resolvió que el estado con jurisdicción es Florida, debido a que los menores residen en ese estado desde hace más de seis meses. La señora Collazo Dragoni presentó una moción de reconsideración, pero la misma fue denegada por el Tribunal.

Inconforme, la señora Collazo Dragoni recurrió ante el foro apelativo intermedio. Planteó que el foro primario erró al declararse sin jurisdicción. Así también, reiteró su alegación de que el señor Noceda González defraudó al Tribunal al brindar información falsa. En cambio, el

recurrido sostuvo que el P.K.P.A. establece un esquema de preferencia jurisdiccional mediante el cual se favorece el estado de residencia del menor. Por otro lado, reiteró que los señalamientos de fraude al Tribunal ya han sido rechazados, por lo cual deben constituir cosa juzgada.

El Tribunal de Apelaciones denegó el recurso al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Concluyó que el foro primario actuó conforme al P.K.P.A., el cual "establece una preferencia jurisdiccional sobre el *estado de residencia* de los menores de edad, para atender las cuestiones relativas a los derechos de custodia de sus padres o parientes".[4] Enfatizó que, como los menores residen en Florida desde el 2014, esa jurisdicción está en mejor posición de salvaguardar sus mejores intereses.

Luego de que su solicitud de reconsideración fuese rechazada, la señora Collazo Dragoni presentó un recurso de *certiorari* ante este Tribunal. Planteó que, conforme con el principio de jurisdicción continua del P.K.P.A. y nuestra jurisprudencia interpretativa, Puerto Rico es el único foro con jurisdicción. Posteriormente, presentó una solicitud en auxilio de jurisdicción. En consideración a lo anterior, ordenamos al señor Noceda González mostrar causa por la cual no debíamos revocar al Tribunal de Apelaciones. Oportunamente, el recurrido presentó una *Moción en Cumplimiento de Orden*. Consecuentemente, denegamos el auxilio solicitado y, luego del trámite

---

[4] Resolución del Tribunal de Apelaciones, KLAN-2016-00137, págs. 7-8.

correspondiente, expedimos el recurso. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II

A. Parental Kidnapping Prevention Act

El traslado interestatal de menores con el propósito de obtener decretos de custodia favorables en otros foros provocó que el Congreso promulgara el P.K.P.A. Mediante esta ley, los tribunales de los estados están obligados a darle entera fe y crédito a los dictámenes de custodia emitidos por sus equivalentes. 28 U.S.C. sec. 1738A(a). Sus objetivos principales son: "promover la cooperación interestatal; facilitar la ejecución de los decretos de custodia de otros estados, prevenir la competencia y el conflicto interjurisdiccional y frenar que los parientes remuevan unilateralmente a los menores para obtener decretos judiciales favorables en otros foros". Santiago v. Kabuka, supra, pág. 534; véase también Ortega v. Morales Ortega, supra, pág. 788.

Para precisar el alcance jurisdiccional del P.K.P.A. conviene discutir sus ocho incisos. El inciso (a) establece que, como norma general, un tribunal no podrá modificar un dictamen de custodia emitido por otro estado si éste fue consistente con la ley. 28 U.S.C. sec. 1738A(a).[5] Por lo tanto, si un estado tenía jurisdicción de forma compatible con la ley, los demás estados deberán

---

[5] 28 U.S.C. sec. 1738A(a) ("Las autoridades de cualquier estado **deberán poner en vigor**, de acuerdo a sus propios términos y no podrán modificar **un decreto de custodia de otro estado**, el cual fue emitido acorde con lo que dispone esta sección, excepto por lo dispuesto en el sub-inciso (f) de esta sección".) (traducción nuestra) (énfasis suplido).

otorgarle entera fe y crédito a ese dictamen. En cambio, el inciso (b) define varios conceptos mencionados en la ley. En lo pertinente, define 'estado de residencia' o 'home state' como el estado donde el menor ha residido por seis meses consecutivos antes de la fecha en que comenzaron los procedimientos de custodia. 28 U.S.C. sec. 1738A(b)(4). Cabe destacar que, al definir 'Estado', la ley federal expresamente extiende sus disposiciones al Estado Libre Asociado de Puerto Rico. 28 U.S.C. sec. 1738A(b)(8).

Para determinar si un dictamen de custodia emitido es consistente con la ley, de modo que aplique la prohibición del inciso (a), el inciso (c) establece que se examinará: (1) si el tribunal que lo emitió tenía jurisdicción bajo las leyes de su estado, y (2) si se cumplieron con una de varias bases jurisdiccionales. 28 U.S.C. sec. 1738A(c). Estas bases jurisdiccionales, que tienen un orden preferencial, son: (A) jurisdicción del estado de residencia del menor; (B) jurisdicción por contactos significativos con el foro; (C) jurisdicción para situaciones en las que el menor fue abandonado o se encuentra en estado de emergencia; (D) jurisdicción cuando no existe otro estado con jurisdicción o ha declinado ejercerla, o (E) jurisdicción continua. Íd.; Santiago v. Kabuka, supra, pág. 535. Por lo tanto, al momento de examinar si un decreto original de custodia fue emitido válidamente, se evaluará primero si se cumplía con el requisito de residencia y así sucesivamente.

De gran importancia para la controversia ante nuestra consideración, el inciso (d) establece que el estado que haya emitido el decreto original de custodia, conserva **jurisdicción continua** sobre el asunto para hacer valer y revisar su determinación original. 28 U.S.C. sec. 1738A(d).[6] Para conservar la jurisdicción se deben cumplir los siguientes requisitos: (1) que el decreto original de custodia sea compatible con las disposiciones del P.K.P.A.; (2) que el foro original mantenga jurisdicción bajo sus propias leyes, y (3) que dicho foro continúe siendo el estado de residencia del menor o al menos de una de las partes. Santiago v. Kabuka, supra, pág. 536. Una vez establecida la jurisdicción continua, la misma prevalece sobre cualquier otra base jurisdiccional.[7]

Por su parte, el inciso (e) establece otro requisito para la validez de los decretos de custodia: notificación adecuada a los padres y oportunidad de ser oídos previo a la determinación. 28 U.S.C. sec. 1738A(e). Como excepción al inciso (d), el inciso (f) reconoce a los tribunales la autoridad para modificar una determinación de custodia emitida originalmente por otro estado, si: (1) el estado que pretende modificar el decreto ostenta jurisdicción, y

---

[6] 28 U.S.C. sec. 1738A(d) ("La jurisdicción de un tribunal de un estado que haya emitido una determinación de custodia de menores o de derechos de visita, compatibles con las disposiciones de esta sección, continúa mientras se cumplan los requisitos de la sección (c)(1) y ese estado se mantenga como estado de residencia del menor o de alguno de los litigantes".) (traducción nuestra).

[7] R. Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada, San Juan, Ed. Programa de Educación Jurídica Continua Universidad Interamericana de Puerto Rico, 1997, Vol. 2, pág. 1328 ("En situaciones de modificación de decretos de custodia, **ocupa la posición preferencial en dicho esquema la jurisdicción continua**, siempre y cuando que los tribunales del foro que emitió el decreto inicial de custodia mantengan jurisdicción sobre la acción conforme a sus leyes".) (énfasis suplido).

(2) el foro original perdió su jurisdicción para modificar el decreto o renunció a ella. 28 U.S.C. sec. 1738A(f). Por consiguiente, se trata de una excepción débil, pues exige que el foro inicial pierda la jurisdicción o renuncie a ella. Por otro lado, el inciso (g) previene los conflictos interjurisdiccionales al prohibirle a los tribunales ejercer jurisdicción si otro tribunal ejerció jurisdicción conforme a la ley. 28 U.S.C. sec. 1738A(g). Finalmente, el inciso (h) es prácticamente idéntico al (f), pues prohíbe modificar el decreto inicial a menos que el tribunal inicial haya perdido o renunciado su jurisdicción. 28 U.S.C. sec. 1738A(h).

## B. Código Civil

Según vimos, uno de los requisitos para determinar si el foro original conserva jurisdicción es analizar si mantuvo jurisdicción bajo sus propias leyes. En Puerto Rico, la disposición pertinente es el Artículo 107 del Código Civil, 31 LPRA sec. 383, cuyo tercer párrafo establece:

> El cónyuge que haya sido privado de la custodia y la patria potestad tendrá derecho a recobrarlas si acreditare ante cualquier sala competente del Tribunal Superior el fallecimiento del otro ex cónyuge o demostrase a satisfacción del tribunal que a los mejores intereses y bienestar de los menores conviene la referida recuperación de la custodia y la patria potestad.

En reiteradas ocasiones hemos expresado que los tribunales deberán analizar todas las circunstancias ante su consideración, teniendo siempre como norte los mejores intereses y el bienestar de los menores. Ortiz v.

Meléndez, 164 DPR 16 (2005); Santana Medrano v. Acevedo Osorio, 116 DPR 298 (1985). Sobre el asunto jurisdiccional, en Marrero Reyes v. García Ramírez, 105 DPR 90, 99 (1976), resolvimos que los tribunales pueden atender casos de custodia en **cualquiera** de las siguientes circunstancias: "(1) cuando se posee jurisdicción *in personam* sobre [alguna de las partes]; (2) cuando el menor está domiciliado en Puerto Rico; (3) cuando el menor está físicamente presente o tiene su residencia habitual en Puerto Rico; y (4) cuando el menor es ciudadano o nacional de Puerto Rico". Por consiguiente, vemos que el ordenamiento puertorriqueño es abarcador con respecto a la jurisdicción de nuestros tribunales en casos de custodia de menores.

C. Jurisprudencia del Tribunal Supremo

En varias ocasiones hemos atendido controversias sobre si los tribunales de Puerto Rico ostentan jurisdicción, conforme con el P.K.P.A., para modificar un decreto de custodia de menores. Tres de ellas ameritan discutirse extensamente, pues explican por qué hay confusión con respecto al esquema jurisdiccional del P.K.P.A.

En Ortega v. Morales Ortega, supra, las partes contrajeron matrimonio en el Estado de California en el 1979. En el 1984, el padre comenzó el procedimiento de divorcio en ese estado. Con el conocimiento del padre, mientras se tramitaba el pleito, la madre y el niño se trasladaron a Puerto Rico. En el 1985, el Tribunal

Superior de California decretó el divorcio, estableció que ambos padres compartirían la patria potestad pero concedió la custodia a la madre. Tres años después, el padre solicitó al Tribunal Superior de California que le concediera la custodia del menor. La madre compareció y solicitó la desestimación del caso, pues el menor residía en Puerto Rico desde el 1984.

Luego de varios trámites procesales, el Tribunal de California concedió la custodia al padre. Fundamentó su decisión en que hubo un cambio sustancial en las circunstancias del caso y sostuvo "que tenía jurisdicción porque se trataba de un decreto original de California donde [el padre] todavía reside". Íd., pág. 786. Para poner en vigor el dictamen, el padre presentó una solicitud de exequátur en el Tribunal Superior de Puerto Rico. No obstante, el Tribunal denegó la solicitud pues entendió que el estado con jurisdicción era Puerto Rico. Inconforme, el padre compareció ante este Tribunal y sostuvo que el foro primario erró al interpretar el P.K.P.A., pues su inciso (d) dispone que el estado que emitió el decreto de custodia tiene jurisdicción para hacer cualquier cambio a dicho decreto, si el menor o uno de los padres aún reside en el estado.

Este Tribunal resolvió que, de todas las bases jurisdiccionales, "[e]l P.K.P.A. expresa preferencia por el estado de residencia del menor". Ortega v. Morales Ortega, supra, pág. 791. Destacamos que esta preferencia se justificó por lo siguiente:

> [S]e entiende que [el estado de residencia del menor] es el que puede determinar mejor lo que es más beneficioso para el niño. Es en dicho estado donde el niño ha hecho amistades, asiste a la escuela y recibe asistencia médica: donde su vida se ha desenvuelto. Por lo tanto, se entiende que es en el estado residencia del menor donde con mayor probabilidad está disponible la evidencia que se requiere para hacer una adecuada determinación de custodia, una que tome en cuenta lo que es más conveniente para el menor. **De manera que de existir conflicto con respecto a cuál es el requisito jurisdiccional aplicable de acuerdo al P.K.P.A., siempre deberá prevalecer el del estado residencia del menor.** Íd., pág. 792 (énfasis suplido).

Por lo tanto, este Tribunal confirmó la determinación del foro primario, pues los tribunales de California ya no tenían jurisdicción por no ser el estado de residencia del menor.

Posteriormente, en Santiago v. Kabuka, supra, se argumentó que, según el P.K.P.A., los tribunales de Puerto Rico no tenían jurisdicción para atender una controversia de custodia. En ese caso las partes contrajeron matrimonio en St. Thomas, Islas Vírgenes, donde establecieron su domicilio conyugal. El matrimonio tuvo un menor que vivió con sus padres en St. Thomas hasta el 1999, cuando la Corte Superior de las Islas Vírgenes decretó el divorcio. El Tribunal acogió un acuerdo que regía las relaciones paterno-filiales y de custodia, pero no lo fusionó ("merged") al dictamen de divorcio. Consecuentemente, la madre y el menor se trasladaron a Puerto Rico.

En el 2004, la madre le solicitó al Tribunal de Primera Instancia de Puerto Rico que asumiera jurisdicción y le otorgara a ella la custodia legal del menor. El padre

reclamó la falta de jurisdicción de los tribunales de Puerto Rico de acuerdo con el P.K.P.A. Asimismo, presentó en el tribunal de Islas Vírgenes una petición para modificar las condiciones de custodia. No obstante, el tribunal de Islas Vírgenes denegó su solicitud y se proclamó sin jurisdicción, pues el acuerdo de custodia no se fusionó a la sentencia.

En cambio, el foro primario de Puerto Rico asumió jurisdicción sobre el caso. Ese dictamen fue confirmado por el Tribunal de Apelaciones, al considerar que Puerto Rico es el estado de residencia del menor para fines del P.K.P.A. En desacuerdo, el padre presentó un recurso de *certiorari* ante este Tribunal.

En Santiago v. Kabuka, supra, citamos a Ortega v. Morales, supra, y reiteramos que la ley establece un esquema que favorece el estado de residencia del menor. No obstante, aclaramos su relación con la jurisdicción continua del inciso (d) del P.K.P.A.:

> [S]i bien el PKPA da preferencia al estado de residencia del menor sobre cualquier otra jurisdicción, la ley confiere jurisdicción continua al estado o foro que haya emitido un decreto original de custodia para que haga valer o revise sus determinaciones originales. 28 U.S.C.A. sec. 1738A(d). **Debe entenderse que ante la existencia de un decreto original que se ajuste a las disposiciones del estatuto, la jurisdicción continua es el criterio principal, aun cuando ésta no sea la jurisdicción de residencia del menor.** Santiago v. Kabuka, supra, pág. 536 (énfasis suplido).

Ahora bien, concluimos que los tribunales de Islas Vírgenes carecían de jurisdicción continua porque ese ordenamiento no reconoce tal jurisdicción cuando los

acuerdos de custodia no son fusionados a la sentencia. Por consiguiente, resolvimos que los tribunales de Puerto Rico podían asumir jurisdicción por tratarse del estado de residencia del menor. Íd., págs. 542-43.

Finalmente, en Infante v. Montalvo, 165 DPR 757 (2005), emitimos una Sentencia donde devolvimos el caso al foro primario para que determinase si, al momento del divorcio, Puerto Rico era el estado de residencia de la menor. La Juez Asociada señora Rodríguez Rodríguez, quien fue la juez ponente en Santiago v. Kabuka, supra, emitió una Opinión de conformidad donde reafirmó que "bajo la cláusula de continuidad del P.K.P.A., un tribunal de Puerto Rico mantiene jurisdicción sobre un procedimiento de custodia a pesar de no ser el estado de residencia del menor". Íd., pág. 760 (Op. conformidad, J. Rodríguez Rodríguez). Cabe mencionar que en una nota al calce la Juez señala que en Ortega v. Morales, supra, no examinamos la cláusula de jurisdicción continua, sino la cláusula de residencia del menor. Infante v. Montalvo, supra, pág. 776 esc. 16.

III

En resumen, la peticionaria sostiene que los tribunales de Puerto Rico conservan jurisdicción conforme con el principio de jurisdicción continua. En cambio, el recurrido plantea que Florida es el foro con jurisdicción, pues es el estado de residencia de los menores. El Tribunal de Primera Instancia acogió esta postura y se pronunció sin jurisdicción. De igual modo, el Tribunal de

Apelaciones denegó expedir el recurso y explicó que la ley federal y nuestra interpretación en Ortega v. Morales, supra, establecen una preferencia jurisdiccional por el estado de residencia. La peticionaria acude ante nosotros y reitera que los tribunales de Puerto Rico poseen jurisdicción continua para revisar el dictamen de custodia emitido previamente. Le asiste la razón. Veamos.

En primer lugar, las disposiciones del P.K.P.A. aplican ante un **conflicto interjurisdiccional**, es decir, cuando se solicita que un tribunal modifique el decreto de custodia emitido por otro estado. Por ejemplo, si el recurrido solicita que se modifique la custodia en los tribunales de Florida, o en cualquier otro estado, ese tribunal debe examinar si tiene jurisdicción conforme con el P.K.P.A. En un caso como este, donde el tribunal de Puerto Rico emitió un decreto de custodia de forma consistente con la ley, los tribunales de Florida están prohibidos de modificar ese dictamen conforme con el inciso (a) del P.K.P.A. 28 U.S.C. sec. 1738A(a). Ahora bien, cuando no está presente ningún conflicto jurisdiccional, no aplican las prohibiciones del P.K.P.A. Por lo tanto, si los tribunales de Puerto Rico son los únicos que han ejercido jurisdicción y solicitan que se modifique su decreto de custodia, como ocurrió en este caso, no estamos ante conflicto jurisdiccional alguno.[8]

---

[8] Véase Infante v. Montalvo, supra, pág. 776 ("El Tribunal de Apelaciones erró al resolver bajo el P.K.P.A., cuando ante dicho foro no se había planteado conflicto jurisdiccional alguno, ya que no fue informado del pleito presentado por la recurrida ante un tribunal en la Florida") (Op. conformidad, J. Rodríguez Rodríguez).

De todos modos, en este caso los tribunales de Puerto Rico tienen jurisdicción continua conforme con las disposiciones del P.K.P.A. debido a que: (1) el decreto original, emitido en el 2010, fue compatible con las disposiciones de la ley; (2) los tribunales de Puerto Rico (foro original) tenían jurisdicción bajo nuestras leyes, y (3) Puerto Rico sigue siendo el estado de residencia de una de las partes, la peticionaria. Véase Santiago v. Kabuka, supra, pág. 536. Sobre el primer aspecto cabe destacar que, al momento de emitirse el dictamen de custodia, Puerto Rico era el estado de residencia de los menores; de modo que el decreto fue consistente con las disposiciones del P.K.P.A. Por consiguiente, la peticionaria tiene derecho a solicitarle a los tribunales de Puerto Rico que modifiquen el dictamen de custodia emitido en el 2010.

En Ortega v. Morales, supra, realizamos unas expresiones que sugieren que el estado de residencia del menor debe prevalecer sobre el estado con jurisdicción continua. Estas fueron desacertadas, pues la ley es clara al disponer en su inciso (a) que ningún estado podrá modificar un decreto de custodia de otro estado, aun cuando el menor resida en otro estado. Santiago v. Kabuka, supra, pág. 536. La importancia jurisdiccional del estado de residencia radica más bien en la determinación de si el dictamen **original** de custodia fue emitido de forma compatible con la ley, pues debemos evaluar si se cumplieron con las bases jurisdiccionales del inciso (c).

De este modo, si el dictamen original cumplió con la base jurisdiccional preferida (estado de residencia), los tribunales de otro estado no podrán modificar ese dictamen.

Cabe señalar que aunque el P.K.P.A. no limita de forma alguna la facultad de nuestros tribunales de revisar nuestro dictamen inicial de custodia, el inciso (f) reconoce la posibilidad de que el tribunal con jurisdicción continua renuncie a su jurisdicción. 28 U.S.C. sec. 1738A(f). El hecho de que nuestros tribunales posean jurisdicción para revisar un dictamen de custodia no necesariamente implica que deban ejercerla. En ocasiones los mejores intereses del menor invitan al tribunal a no ejercer su jurisdicción, pues el estado de residencia actual del menor resulta ser el foro más adecuado para dirimir la controversia. Véase Manuel E. Moraza Choisne, Juridical Solutions in the U.S.A. for Parental Kidnapping in Child Custody Cases, 24 Rev. Jur. UIPR 309, 323 (1990) ("Even if a custody decree had been issued by the original state, so that it has continuing jurisdiction, **the original state where the present parent remained alone may decide to decline its preferred jurisdictional basis because the new home state has a more significant connection with the child and thus is presumably better able to protect the child's best interests**".) (énfasis suplido).[9]

---

[9] Aunque errado en su análisis del P.K.P.A., en Morales v. Ortega, supra, este Tribunal fundamentó elocuentemente por qué conviene que sea el estado de residencia del menor quien tome la determinación sobre custodia.

Como los tribunales de Puerto Rico conservaron jurisdicción continua con respecto a su dictamen inicial, los tribunales inferiores erraron al resolver que el foro con jurisdicción es Florida. El lugar de residencia actual de los menores no afecta lo anterior, pues el P.K.P.A. se aprobó precisamente para evitar que un menor sea trasladado a otra jurisdicción y se pretenda obtener un dictamen más favorable en ese estado. Véase Íd., pág. 316 ("By making the physical possession of the child irrelevant to the exercise of jurisdiction, child snatching is thus discouraged"). En fin, resolvemos que, si se cumplen los tres requisitos del 28 U.S.C. sec. 1738A(d), los tribunales de Puerto Rico tienen jurisdicción continua para atender una modificación de custodia, incluso si el estado de residencia del menor es otro.

IV

Por los fundamentos que anteceden, revocamos la Resolución del Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Se dictará sentencia de conformidad.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Jeannette Collazo Dragoni

    Peticionaria

        v.                    CC-2016-0402      *Certiorari*

Frank Noceda González

    Recurrido


SENTENCIA

En San Juan, Puerto Rico, a 26 de junio de 2017.

Por los fundamentos antes expuestos, en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, revocamos la Resolución del Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García concurren sin opinión escrita. El Juez Asociado señor Estrella Martínez hace constar la siguiente expresión:

> "El Juez Asociado señor Estrella Martínez concurre con la Opinión emitida por el Tribunal Supremo en el caso de referencia. En primera instancia, considera que la discusión y aplicación del *Parental Kidnapping Prevention Act* (P.K.P.A.), 28 U.S.C. sec. 1738A, es innecesaria en este caso, dado que no se ha suscitado una controversia interjurisdiccional, cuestión que se reconoce en la Opinión. Collazo Dragoni v. Noceda González, CC-2016-0402,

Opinión del Tribunal emitida por la Jueza Presidenta Oronoz Rodríguez, págs. 15-16. Si bien los menores, junto con su padre, residen en el estado de la Florida, del expediente surge que ninguna de las partes ha iniciado un procedimiento judicial en ese estado para dirimir cuestiones referentes a la custodia de los menores. Es decir, no hay controversia entre dos estados. La P.K.P.A. es de aplicación cuando hay dos jurisdicciones en conflicto. Véase P.K.P.A., 28 U.S.C. sec. 1738A(a). En este caso, todos los procedimientos se han realizado ante los tribunales de Puerto Rico y, por tanto, el Juez Asociado señor Estrella Martínez opina que la controversia se puede resolver simplemente acudiendo a la legislación y jurisprudencia local, la cual establece las circunstancias en las cuales un tribunal de Puerto Rico posee jurisdicción en un caso de custodia. Véanse Artículo 107 del Código Civil, 31 LPRA sec. 383; Marrero Reyes v. García Ramírez, 105 DPR 90, 99-100 (1976).

Por otro lado, discrepa del criterio del Tribunal en cuanto a que las expresiones en el caso de Ortega, Jr. v. Morales Ortega, 131 DPR 783 (1992), fueron desacertadas. En ese caso se determinó que, bajo la legislación del estado de California y los hechos particulares que se suscitaron, el tribunal de ese estado carecía de jurisdicción para emitir un decreto modificando la custodia. Íd., pág. 795. En consecuencia, se concluyó que los tribunales de Puerto Rico no tenían que darle 'entera fe y crédito al decreto de California', según lo establecido en el P.K.P.A. Íd. En ese sentido, no se discutió la cláusula de continuidad de jurisdicción del P.K.P.A., pues era inaplicable por razón de que el estado de California había perdido jurisdicción bajo sus propias leyes. Véase 28 U.S.C. sec. 1738A(d); Infante v. Montalvo, 165 DPR 757, 776 n.16 (2005) (Op. Conformidad, J. Rodríguez Rodríguez). En consecuencia, resulta equivocado concluir, como sucede en la Opinión que hoy emite este Tribunal, que en Ortega, Jr. v. Morales Ortega, supra, se estableció 'que el estado de residencia del menor debe prevalecer sobre el estado con jurisdicción continua'. Collazo Dragoni v. Noceda González, supra, pág. 16."

                    Juan Ernesto Dávila Rivera
                    Secretario del Tribunal Supremo